1

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

7

8

9

10

11

12

BRIAN WURTS,

                          Plaintiff,

v.

CITY OF LAKEWOOD, et al.,

                          Defendants.

CASE NO. C14-5113 BHS

ORDER GRANTING IN PART
AND DENYING IN PART
PLAINTIFF AND DEFENDANTS'
MOTIONS FOR SUMMARY
JUDGMENT

13

14

15

16

17

18

       This matter comes before the Court on Plaintiff Brian Wurts's ("Wurts") motion

for summary judgment (Dkt. 29) and Defendants City of Lakewood, Brett Farrar, Choi

Halladay, Heidi K. Hoffman, Andrew E. Neiditz, John Unfred's (collectively

"Defendants") motion for summary judgment (Dkt. 30). The Court has considered the

pleadings filed in support of and in opposition to the motions and the remainder of the

file and hereby grants in part and denies in part the motions for the reasons stated herein.

19

**I. PROCEDURAL HISTORY**

20

21

22

       On February 5, 2014, Wurts filed a complaint against Defendants in Pierce County

Superior Court for the State of Washington.  Dkt. 2-10.  Wurts asserts causes of action

for wrongful discharge in violation of public policy, violations of Washington law against

discrimination ("WLAD"), deprivation of First Amendment rights, and deprivation of Equal Protection rights.  *Id.*

On February 6, 2014, Defendants removed the matter to this Court.  Dkt. 1.

On June 26, 2014, Defendants filed an amended answer and asserted counterclaims for unjust enrichment and fraud by omission.  Dkt. 19.

On March 5, 2014, Wurts filed a motion for summary judgment (Dkt. 29) and Defendants filed a motion for summary judgment (Dkt. 30).  Both parties responded (Dkts. 38 & 45), and both parties replied (Dkt. 49 & 50).  On April 1, 2014, each party filed a surreply.  Dkts. 54 & 55.

## II. FACTUAL BACKGROUND

Defendant City of Lakewood ("City") hired Wurts in 2004 as an officer with the Lakewood Police Department.  Dkt. 29-1, Declaration of Brian Wurts ("Wurts Decl."), ¶ 2.  From 2004 to 2010, Wurts consistently received superior performance reviews for his work as an officer and on other projects.  Dkt. 29-3, Declaration of Douglas McDermott ("McDermott Dec."), Exhs. 1–7.   In addition to serving as a full-time senior patrol officer, Wurts served on the executive board of the Lakewood Police Independent Guild ("Guild"), the collective bargaining unit for commissioned officers and sergeants of the Lakewood Police Department, and as president of the Guild. Wurts Decl. ¶ 4.

In 2006, Wurts became president of the Guild.  *Id.*, ¶ 6.  As Guild president, Mr. Wurts represented the rights and interests of the Guild and its members, which included engaging in negotiations with the City over the Collective Bargaining Agreement ("CBA") between the Guild and the City, representing Guild members with respect to

disciplinary actions, bringing multiple grievances on behalf of Guild members, and filing the Guild's first unfair labor practice complaint ("ULP") against the City in November 2011.  *Id.* ¶ 7.

On February 8, 2012, Wurts's fellow officer, Skeeter Manos ("Manos"), was arrested and charged with ten counts of wire fraud in the United States District Court for the Western District of Washington.  McDermott Dec., ¶ 9, Exh. 8.  In the charging document, the Government alleged that Manos had embezzled over $112,000 in charitable donations intended for the families of Lakewood police officers killed in the line of duty, as well and an additional $47,000 from the funds he managed for the Guild as its treasurer.  *Id.*  Manos ultimately pled guilty to the charges against him.  *Id.*

On February 8, 2012, the same day as Manos's arrest, Chief Brett Farrar placed Wurts on administrative leave.  *Id.* ¶ 10, Ex. 9.  The reason for this action was listed as "[a]llegations of such a serious nature that termination is the likely outcome if they are found to be true."  *Id.*  On that same day, the department initiated an investigation into Wurts's "[t]heft of donated funds" based on allegations from fellow officers.  *Id.*, Exh. 10. Wurts was also instructed that, while on paid administrative leave, he was "to be available for duty or investigative purposes during" the period of leave.  *Id.*

The initial investigation was subsequently amended to better describe the allegations against Mr. Wurts and clarify that they "involve[d] his duties as Guild President."  *Id.*, Ex. 11.  The amended notice contained the following "Summary of Complaint" against Wurts:

1          It is alleged that Skeeter Manos stole at least $100,000 from
          donations intended for the children of our fallen Officers from December
2          2009 to February 2011 and that he spent this money on personal expenses.
          It is further alleged that Manos stole at least $30,000 from the Lakewood
3          Police Independent Guild between 2006 and 2012. Since you were LPIG
          President during this time, it is alleged that you had knowledge of this
4          activity and took no action.

5   *Id.*, Ex. 12. The investigation was assigned the number 2012PSS-004.  *Id.*

6          While investigation 2012PSS-004 was pending, four more investigations of Mr.

7   Wurts were ordered.  Investigation 2012PSS-005 involved allegations that Wurts

8   received payment for his off-duty employment as a board member for a legal defense

9   group, WACOPS, and lied to his department about being paid for the work performed.

10  *Id.*, Exh. 13.  Investigation 2012PSS-013 involved allegations that Wurts took an out-of-

11  state vacation while on paid administrative leave and continued to work for WACOPS in

12  a paid capacity while on leave.  *Id.*, Exh. 14.  Investigation 2012PSS-017 involved

13  allegations that Wurts had engaged in sexual activity with another officer while on duty.

14  *Id.*, Exh. 15.  Investigation 2012PSS-020 was described by Assistance Chief Michael

15  Zaro as follows:

16          The purpose of this investigation was to determine if Officer Wurts
          violated Department policy by talking to witnesses involved in
17          investigation number 2012PSS-004 before it was finally adjudicated.
          Officer Wurts admitted in his statement that he talked to Officer Jeff Martin
18          and former employee Shawn Noble about their statements prior to his
          Loudermill hearing. Officer Wurts acknowledges that this is contrary to
19          department policy but believes it is his right to do so.

20  *Id.*, Exh. 16.

21          On December 28, 2012, City Manager Andrew Neiditz and Assistant City

22  Manager Choi Halladay sent Wurts a letter informing Wurts of his immediate

termination. *Id*., Exh. 17 ("Termination Letter").  The letter informed Wurts that the allegations that Wurts violated his oath of office, failed to obey all laws, and violated standards of professional conduct were found to be sustained and true. *Id*. at 1. Moreover, the letter stated that "the investigation supports the conclusion that [Wurts's] conduct facilitated the theft and fraud committed by Skeeter Manos." *Id*. at 2.  With regard to a discipline determination, the letter provides as follows:

> Your performance evaluations are consistently satisfactory or superior and reflect the ability to carry out the day to day duties of an officer with the department.
> Given the disciplinary history and day to day performance, misconduct would have to be severe in order to merit significant discipline or termination. The recommendation of Chief Farrar is termination. I concur with this recommendation, because this misconduct reaches that level of severity.

*Id*. at 3.

With regard to the City's counterclaims, on December 31, 2012, Wurts made a claim to CIGNA Insurance Group ("CIGNA") for disability benefits.  Wurts Decl., ¶ 33. CIGNA approved Wurts's claim and paid Wurts $414.70 per month for the months of May through December of 2012.  *Id*.  It is undisputed that Wurts was on paid administrative leave during these months.

## III. DISCUSSION

### A.    Motions to Strike

Both parties filed a surreply, and both parties are aware that it is improper to include new argument or evidence in a reply brief.  *See United States v. Puerta*, 982 F.2d 1297, 1300 n.1 (9th Cir. 1992).

First, Wurts improperly submitted a declaration and additional exhibits in support of his reply.  Dkt. 51.  Defendants correctly move to strike this additional evidence because it is improper.  The Court agrees and grants Defendants' motion.

Second, Wurts argues that Defendants raised new arguments in their reply that were not raised in the initial motion.  Dkt. 54.  Specifically, Wurts argues that "[f]or the first time in their reply brief, defendants ask the Court to dismiss plaintiff's claims in their entirety against defendants Halladay, Unfred, and Hoffman."  Dkt. 54 at 2. Notwithstanding the fact that individual liability against these defendants appears to be completely implausible, Wurts is correct that Defendants did not raise these issues in their original brief.  Because asserting such claims may needlessly increase the cost of litigation and unnecessarily consume resources of the parties and the Court, Wurts may file a subsequent brief on the merits of these claim alone no later than May 7, 2015. Therefore, the Court denies Wurts's motion to strike as moot.

**B.    Summary Judgment**

In this case, Wurts moves for summary judgment on his claim for wrongful termination in violation of public policy based on his union activities and on the City's counterclaims.  Dkt. 29.  Defendants move for summary judgment on all of Wurts's claims.  Dkt. 30.

**1.    Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

1  The moving party is entitled to judgment as a matter of law when the nonmoving party

2  fails to make a sufficient showing on an essential element of a claim in the case on which

3  the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

4  323 (1986).  There is no genuine issue of fact for trial where the record, taken as a whole,

5  could not lead a rational trier of fact to find for the nonmoving party.  *Matsushita Elec.*

6  *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must

7  present specific, significant probative evidence, not simply "some metaphysical doubt").

8  *See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists

9  if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or

10  jury to resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477

11  U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

12  626, 630 (9th Cir. 1987).

13         The determination of the existence of a material fact is often a close question. The

14  Court must consider the substantive evidentiary burden that the nonmoving party must

15  meet at trial – e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477

16  U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630.  The Court must resolve any factual

17  issues of controversy in favor of the nonmoving party only when the facts specifically

18  attested by that party contradict facts specifically attested by the moving party.  The

19  nonmoving party may not merely state that it will discredit the moving party's evidence

20  at trial, in the hopes that evidence can be developed at trial to support the claim.  *T.W.*

21  *Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255).  Conclusory,

22

1  nonspecific statements in affidavits are not sufficient, and missing facts will not be

2  presumed.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

3  **2.      Discrimination**

4       In this case, Defendants argue that Wurts failed to meet the procedural

5  requirements for asserting a discrimination claim based on his sexual orientation.  Dkt. 30

6  at 13–15.  In the alternative, Defendants argue that Wurts's claim fails as a matter of law.

7  *Id*. at 15–18.

8       **a.      Procedural Requirements**

9       In this case, Wurts served a claim for damages on the City on October 9, 2013.

10  Bolasina Decl., Ex. E.  The claim, in relevant part, provides as follows:

11       On December 28, 2012, [Wurts's] employment with the Lakewood
         Police Department was terminated for his protected conduct and actions as
12       union president.
                                          ***
13       Mr. Wurts was subject to discrimination in violation of the
         Washington Law Against Discrimination, RCW 49.60.180, and suffered an
14       adverse employment action and termination as a result of discrimination.
         Mr. Wurts was an employee protected by a collective bargaining
15       agreement and his employment was terminated in contravention of the
         public policy evinced by RCW 41.56. He was discharged in violation of a
16       clear mandate of public policy based upon his engagement in protected
         union activities.
17
18  *Id*. at 5.  Defendants argue that "[n]othing in [Wurts's] claim would have put the City on

19  notice of his claim for sexual orientation."   Dkt. 30 at 15.  Wurts, however, argues that

20  Defendants waived this argument and that Wurts substantially complied with the statute.

21  Dkt. 45 at 14.

22

1    With regard to waiver, "a defendant may waive an affirmative defense if either (1)

2  assertion of the defense is inconsistent with defendant's prior behavior or (2) the

3  defendant has been dilatory in asserting the defense." *King v. Snohomish Cnty.*, 146

4  Wn.2d 420, 424 (2002) (citing *Lybbert v. Grant County*, 141 Wn.2d 29, 39 (2000)).

5  Under this law, Wurts asserts that Defendants' conduct is inconsistent with the assertion

6  of the defense.  Specifically, Wurts argues that, "[b]y engaging in prolonged and costly

7  discovery and litigation on the merits of plaintiff's claims, and unrelated to the claim

8  filing affirmative defense, defendants have waived the defense." Dkt. 45 at 15.  It is

9  undisputed that there are no other unusual substantive or procedural facts in this case.

10  Wurts simply argues that Defendants should have brought a pre-discovery dispositive

11  motion on this issue and, because they didn't, they waived this defense.   There is no case

12  that stands for that proposition.  Defendants asserted the affirmative defense in their

13  answer and raised the defense in their first dispositive motion.  Concluding that

14  Defendants waived the defense under these usual and normal procedural facts would

15  prescribe a new rule of law that the defense must be raised in a dispositive motion before

16  the summary judgment stage or else it is waived.  The Court declines to adopt Wurts's

17  proposition as a rule of law.  Therefore, the Court concludes that Defendants did not

18  waive this defense.

19    With regard to the second procedural argument, the claim filing statute "must be

20  liberally construed so that substantial compliance will be deemed satisfactory."  RCW

21  4.96.020(5).  One of the purposes of the statute is to allow governmental entities time to

22  investigate, evaluate, and settle claims.  *Medina v. Public Util. Dist. No. 1*, 147 Wn.2d

1   303, 310 (2002).  To effectuate this purpose, the Notice of Claim must describe "the

2   injury or damage, state the time and place the injury or damage occurred, state the names

3   of all persons involved, if known, and shall contain the amount of damages claimed."

4   RCW 4.96.020(3).  Although courts require strict compliance with the filing deadlines of

5   RCW 4.96.020, the content of the Notice of Claim need only substantially comply.

6   *Sievers v. City of Mountlake Terrace*, 97 Wn. App. 181, 183 (1999).

7       In this case, Defendants argue that Wurts did not substantially comply with the

8   claim filing statute.  Dkt. 50 at 4–5.  The Court agrees.  First, Wurts's claim only

9   explicitly refers to discrimination based on his union activities.  The claim makes no

10  mention whatsoever of any other type of discrimination.  Wurts's failure to at least alert

11  Defendants that any other type of discrimination allegedly occurred shows that he did not

12  comply with the purpose of the statute by allowing the governmental entity an

13  opportunity to investigate or evaluate the claim.

14      Second, even if one considered citing the relevant discrimination statute notice of

15  a sexual discrimination claim, Wurts failed to provide anything more than mere labels

16  and conclusions.  Wurts did not mention the type of injury, when the injury occurred, or

17  the names of the persons involved.  Wurts doesn't contest any of these failures and only

18  argues that the notice requirement should be liberally construed and is not intended to be

19  a "gotcha" provision.  Dkt. 45 at 15–16.  The Court agrees that it is not intended to be a

20  "gotcha" provision for either party, but places the burden on the claimant to effectuate the

21  purpose of the statute.  As such, the Court concludes that Wurts failed to substantially

22  comply with the notice provision of the statue by only citing the WLAD.  Therefore, the

1  Court grants Defendants' motion on Wurts's sexual orientation discrimination claim for

2  failure to meet the procedural prerequisites.

3          **b.     Merits**

4          Even if Wurts met the procedural requirements for this claim, he has failed to

5  establish his prima facie case and submit evidence of pretext.  Under *McDonnell*

6  *Douglas*, unlawful discrimination is presumed if the plaintiff can show that (1) he

7  belongs to a protected class, (2) he was performing according to his employer's

8  legitimate expectations, (3) he suffered an adverse employment action, and (4) other

9  employees with qualifications similar to his own were treated more favorably.  *Godwin v.*

10 *Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998) (citing *McDonnell Douglas*

11 *Corp. v. Green*, 411 U.S. 792, 802 (1973))[1].  If the plaintiff succeeds in doing so, then the

12 burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its

13 allegedly discriminatory conduct.  *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 640

14 (9th Cir. 2003), *as amended* (Jan. 2, 2004).  If the defendant provides such a reason, the

15 burden shifts back to the plaintiff to show that the employer's reason is a pretext for

16 discrimination.  *Id.*

17         First, Wurts has failed to establish his prima facie case of discrimination.  Not only

18 does Wurts fail to cite any evidence in support of his claim (*see* Dkt. 45 at 17–18), but

19 Wurts also fails to show that other employees were treated more favorably.  Defendants

20 initiated their initial investigation based on allegations that Wurts was either involved in

21 _____

22         [1] The *McDonnell Douglas* test is used for Wurts's WLAD and Equal Protection claims.

1   or at least complacent in Manos's embezzlement.  While Wurts argues that no other

2   member of the Guild's board was subject to an investigation, Wurts fails to submit any

3   evidence that any other member of the board was alleged to have participated or at least

4   acted to conceal Manos's crimes.  Moreover, Wurts fails to acknowledge the

5   investigations that resulted in findings that Wurts had violated the department's Manual

6   of Standards or identify any other officer that committed similar infractions and was not

7   terminated.  Therefore, the Court finds that Wurts has failed to establish a prima facie

8   case of discrimination.

9          Second, Wurts fails to submit any evidence that Defendants' legitimate,

10  nondiscriminatory reasons for terminating Wurts, as set forth in the Termination Letter,

11  are merely pretext for discrimination.  Instead, Wurts argues in a conclusory fashion that

12  Defendants' reasons are "unworthy of belief."  Dkt. 45 at 18.  Wurts must do more than

13  provide attorney argument.  Moreover, Wurts repeatedly asserts that others should have

14  also been investigated for Manos's actions and for improper sexual activity while on the

15  job.  Yet, Wurts fails to submit any evidence to substantiate such claims.  In fact, this is

16  the reason no other officer was investigated, a lack of evidence to initiate an

17  investigation.  Whether circumstantial or direct, Wurts fails to submit any evidence in

18  support of pretext.  Therefore, the Court grants Defendants' motion on Wurts's

19  discrimination claim based on sexual orientation.

20         **3.     Discharge in Violation of Public Policy**

21         Washington law recognizes a cause of action for wrongful discharge where the

22  discharge violates a clear mandate of public policy.  *See Reninger v. State Dep't of*

1   *Corrs.*, 134 Wn.2d 437, 446 (1998).  To establish such a claim, a plaintiff must show (1)

2   a clear public policy, (2) that discouraging the plaintiff's conduct would jeopardize the

3   public policy (the "jeopardy element,") and (3) that the plaintiff's public-policy-linked

4   conduct caused the dismissal.  *Korslund v. DynCorp Tri-Cities Servs., Inc.*, 156 Wn.2d

5   168, 178-79 (2005); *Briggs v. Nova Servs.*, 166 Wn.2d 794, 817 (2009); *Gardner v.*

6   *Loomis Armored Inc.*, 128 Wn.2d 931, 941 (1996).  Then, "'the defendant must not be

7   able to offer an overriding justification for the dismissal' (absence of justification

8   element)." *Hubbard*, 146 Wn.2d at 707 (quoting *Gardner*, 128 Wn.2d at 941).

9            **a.**    **Sexual Orientation**

10         The issue on this claim is whether the WLAD provides an adequate alternative

11   legal remedy.  "In order to establish the jeopardy element, a plaintiff must show that

12   other means of promoting the public policy are inadequate . . . ." *Cudney v. ALSCO, Inc.*,

13   172 Wn.2d 524, 530 (2011) (citing *Hubbard v. Spokane County*, 146 Wn.2d 699, 713

14   (2002)).  The Washington Supreme Court

15         has repeatedly applied this strict adequacy standard, holding that a tort of
            wrongful discharge in violation of public policy should be precluded unless

16         the public policy is inadequately promoted through other means and
            thereby maintaining only a narrow exception to the underlying doctrine of

17         at-will employment.

18   *Cudney*, 146 Wn.2d at 530.  Moreover, the "court has always been mindful that the

19   wrongful discharge tort is narrow and should be 'applied cautiously.'" *Danny v. Laidlaw*

20   *Transit Servs., Inc.*, 165 Wn.2d 200, 208 (2008) (quoting *Sedlacek v. Hillis*, 145 Wn.2d

21   379, 390 (2001)).

22

1    In this case, Wurts has failed to show that the WLAD inadequately promotes the

2    public policy of discrimination based on sexual orientation.  Other than attorney

3    argument and selectively misquoted cases, Wurts fails to offer any argument that this

4    duplicative claim should proceed.  First, Wurts cites *Piel v. City of Fed. Way*, 177 Wn.2d

5    604 (2013), for the proposition that a "wrongful discharge claim exists to promote and

6    protect that underlying purpose [to eradicate discrimination] and therefore may proceed

7    alongside a claim under the [WLAD] statutory scheme."  Dkt. 45 at 21.  In *Piel*, however,

8    the court reaffirmed prior cases holding that

> an employee protected by a collective bargaining agreement may bring a
> common law claim for wrongful termination based on the public policy
> provisions of chapter 41.56 RCW notwithstanding the administrative
> remedies available through [the Public Employees Relations Commission].

11   *Piel*, 177 Wn.2d at 607.  In other words, the court has repeatedly held that the PERC

12   administrative remedies inadequately promote the public policy in question.  As such,

13   *Piel* does not support the proposition that the WLAD inadequately promotes the public

14   policy against discrimination.  In fact, the only discrimination cases in which the court

15   found that the WLAD does not promote this policy involved employers that fell below

16   the statutory minimum number of employees.  *See, e.g.*, *Roberts v. Dudley*, 140 Wn.2d 58

17   (2000), *as amended* (Feb. 22, 2000).  Because Wurts does not contend that WLAD does

18   not apply to Defendants, Wurts's argument is without merit.

19   Second, Wurts contends that a wrongful termination claim is precluded only when

20   the statutory remedy is "mandatory and exclusive."  Dkt. 45 at 22 (citing *Cudney*, 146

21   Wn.2d at 535).  In citing this test, Wurts incorrectly cites pre-*Gardner* case law.  *See id.*

1   (citing *Wilmot v. Kaiser Aluminum & Chemical Corp.*, 118 Wn.2d 46 (1991)).  Since

2   *Gardner*, however, the Washington Supreme Court has "consistently said that a plaintiff

3   must show that other means of promoting the public policy are inadequate."  *Cudney*, 172

4   Wn. 2d at 535.  Therefore, both of Wurts's arguments are without merit, and the Court

5   grants Defendants' motion on Wurts's claim for wrongful termination in violation of

6   public policy based on his sexual orientation.

7               **b.     Union Activity**

8           Wurts also asserts a claim that he was wrongfully discharged for his union

9   activity.  On this claim, the parties dispute the causation element and the absence of

10  justification element.  With regard to causation, this element is generally a question of

11  fact.  *See Sedlacek v. Hillis*, 104 Wn. App. 1, 23 (2000), *aff'd in part, rev'd in part*, 145

12  Wn.2d 379 (2001).  Wurts argues that he was fired merely because "he was president of

13  the Guild."  Dkt. 49 at 6.  In fact, Wurts asserts that the "reasons stated in the

14  [Termination Letter] unambiguously establish that [he] was terminated for his conduct as

15  [Guild] president."  Dkt. 29 at 20.  While Wurts's termination letter does reference his

16  conduct as president that "facilitated the theft and fraud committed by Skeeter Manos,"

17  the letter also references Wurts's violations of his oath of office, his duty to obey all laws,

18  and his duty to abide by certain standards of personal conduct.  *See* Termination Letter at

19  1–3.  Based on these facts, Defendants have shown that material questions of fact exist on

20  the issue of whether Wurts was wrongfully terminated in violation of public policy.

21  Therefore, the Court denies Wurts's motion for summary judgment on this claim.

22

1    Likewise, Wurts has shown that questions of fact exist on the issue of a nexus

2    between his conduct as president and his wrongful discharge.  While there is evidence

3    that Wurts's friendship with Manos could have clouded his judgment, this is not the only

4    conclusion that a reasonable juror could make.  For example, a reasonable juror could

5    conclude that the City was motivated by the opportunity to terminate a union president

6    who openly criticized the City's management.  Therefore, the Court denies Defendants'

7    motion on this issue.

8    With regard to an absence of justification, Defendants have failed to show that

9    there is an absence of material questions of fact.  The Termination Letter provides in part

10   as follows:

11           Your performance evaluations are consistently satisfactory or
             superior and reflect the ability to carry out the day to day duties of an
12           officer with the department.
             Given the disciplinary history and day to day performance,
13           misconduct would have to be severe in order to merit significant discipline
             or termination.
14
15   Termination Letter at 3.  Based on this admission by the City, the Court is unable to

16   conclude that every reasonable juror could conclude that Wurts's conduct merited

17   termination.  Therefore, the Court denies Defendants' motion on Wurts's claim for

18   termination in violation of public policy based on his union activities.

19   **4.      First Amendment**

20   To establish a prima facie case for violation of the First Amendment, a plaintiff

21   bears the burden to show that: (1) he spoke on a matter of public concern; (2) he spoke as

22   a private citizen rather than as public employee; and (3) his protected speech was a

1  substantial or motivating factor in the adverse employment action taken against him.

2  *Desrochers v. City of San Bernardino*, 572 F.3d 703, 708–09 (9th Cir. 2009).

3       In this case, the parties dispute whether Wurts's speech was a matter of public

4  concern.  To warrant First Amendment protection, an employee's speech must address "a

5  matter of legitimate public concern."  *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205,*

6  *Will Cnty., Illinois*, 391 U.S. 563, 571 (1968).  As a matter of law, "the competency of

7  the police force is surely a matter of great public concern."  *McKinley v. City of Eloy*, 705

8  F.2d 1110, 1114 (9th Cir. 1983).  Only speech that deals with "individual personnel

9  disputes and grievances" and that would be of "no relevance to the public's evaluation of

10 the performance of governmental agencies" is generally not of "public concern."  *Id.*

11      Although Defendants argue otherwise, Wurts's speech as Guild President went

12 beyond individual personnel disputes and grievances.  At the very least, Wurts lobbied on

13 behalf of the entire police force for across-the-board raises and identified allegedly

14 overpaid City administrators.  Dkt. 46, Exh. 1.  Wurts also addressed issues with a

15 reduced police force and the impacts on crime in the community.  *Id.*, Exh. 2.  While it is

16 true that, as an officer, Wurts would have received a benefit from the requested raise, the

17 Court is unable to conclude that Wurts's speech was of no relevance to the public's

18 evaluation of the City's operations.  *McKinley*, 705 F.2d at 1114.  Therefore, the Court

19 denies Defendants' motion on Wurts's First Amendment claim.

20      **5.     Failure to Promote**

21      Defendants move for summary judgment on Wurts's claim that he was improperly

22 passed over for promotion.  Dkt. 30 at 21–22.  While Wurts agrees that such claims are

1   precluded by the statute of limitations, Wurts argues that evidence of the failure to

2   promote may still be admitted to prove his other claims.  Dkt. 45 at 24–25.  The Court

3   will address issues regarding admissible evidence either in the parties' motions in limine

4   or when the evidence is offered at trial.  For purposes of the current motion, it is enough

5   to conclude that Defendants are entitled to summary judgment on any claim for failure to

6   promote.  Therefore, the Court grants Defendants' motion on this claim.

7        **6.   Duty to Mitigate**

8        The duty to mitigate damages requires a plaintiff to exercise reasonable diligence

9   in finding other suitable employment.  *See Sangster v. United Air Lines, Inc.*, 633 F.2d

10  864, 868 (9th Cir. 1980).  Failure to mitigate damages can prevent the award of both back

11  pay and front pay.  *Goodman v. Boeing*, 75 Wn. App. 60, 79 (1994).  The question of

12  whether an employee used sufficient diligence in seeking comparable employment is

13  usually a question of fact, but, where the facts are undisputed and permit only one

14  conclusion, it may be decided as an issue of law.  *Caudle v. Bristow Optical Co.*, 224

15  F.3d 1014, 1021 (9th Cir. 2000); *E.E.O.C. v. High Speed Enter., Inc.*, 833 F. Supp. 2d

16  1153, 1162 (D. Ariz. 2011).

17       "The back pay remedy is explicitly limited by a duty to mitigate and is reducible

18  by the plaintiff's interim earnings, or by the amount the plaintiff would have earned with

19  'reasonable diligence.'"  *McCoy v. Oscar Mayer Foods*, 108 F.3d 1379 (7th Cir. 1997)

20  (quoting *Ford Motor Co. v. EEOC*, 458 U.S. 219, 230 (1982)).  "Front pay awards, like

21  backpay awards, are also reduced by the amount the plaintiff could earn using reasonable

22  mitigation efforts."  *Barron v. Safeway Stores, Inc.*, 704 F. Supp. 1555, 1570 (E.D. Wash.

1   1988).  Where a plaintiff incurs certain losses "because of a clearly unjustifiable refusal

2   to take desirable new employment, the amount of these losses will be deducted from the

3   backpay award." *N.L.R.B. v. Int'l Bhd. of Elec. Workers, Local Union 112, AFL-CIO*,

4   992 F.2d 990, 993 (9th Cir. 1993).  However, "an employer is 'released from a duty to

5   establish the availability of comparable employment' if the employer can prove 'that the

6   employee made no reasonable efforts to seek such employment.'"  *Haeuser v. Dep't of

7   Law*, 368 F.3d 1091, 1100 (9th Cir. 2004) (internal citations omitted).

8           In this case, Defendants argue that Wurts completely failed to mitigate his

9   damages, which bars his claims for back or front pay.  Dkt. 30 at 22–24.  Wurts argues

10  that questions of fact exist and that, even if he failed to mitigate, such failure only reduces

11  those damages that "could have been avoided through reasonable efforts under the

12  circumstances."  Dkt. 45 at 26.  Wurts is wrong on both issues.  First, Wurts has failed to

13  show that questions of fact exist as to his reasonable efforts to seek employment because

14  he did not seek any employment.  He asserts that he is "not currently employable as a

15  police officer or eligible for substantially similar employment due to his termination."

16  Dkt. 45 at 27.  The Court agrees with Wurts that questions of fact exist for trial if he can

17  show that he "would have been unable to obtain comparable employment because he had

18  been fired from his government job."  Dkt. 45 at 27 (citing *Haeuser v. Dep't of Law*, 368

19  F.3d 1091, 1101–1102 (9th Cir. 2004)).  In *Haeuser*, however, the plaintiff submitted

20  actual evidence that at least two large law firms in the area would not hire an attorney

21  that had been fired from a prior job, which had happened to plaintiff.  *Haeuser*, 368 F.3d

22  at 1102.  Contrary to the plaintiff in *Haeuser*, Wurts has failed to submit any evidence to

1  support his assertion that he is unemployable, and it is undisputed that he never applied

2  for a job and that he was never rejected.  Under these circumstances, conclusory

3  allegations are insufficient to overcome a summary judgment motion.

4      Furthermore, Wurts's assertion that he spent a couple hours a week on self-

5  employment ventures is insufficient to meet his burden on this issue.  *See, e.g.*, *Hansard*

6  *v. Pepsi-Cola Metro. Bottling Co.*, 865 F.2d 1461, 1468 (5th Cir. 1989) ("Hansard's

7  efforts were simply insufficient. The flea market business was never more than a part-

8  time enterprise. Hansard was fully capable of continuing his job search during the

9  week.").  Therefore, the Court finds that Wurts has failed to submit sufficient evidence to

10  show that material questions of fact exist for trial on this issue.

11      Second, lost and future wages are distinct categories of damages that may be

12  reduced in certain circumstances.  While Wurts may have claims for other types of

13  damages (emotional distress, nominal damages, etc.), his failure to mitigate lost wages is

14  dispositive of seeking damages for any amount of lost wages.  In other words, because

15  Wurts did not apply for any other job, no reasonable juror could award Wurts any amount

16  of lost wages and, therefore, there is no amount of wages to reduce.  The Court grants

17  Defendants' motion on Wurts's claim for lost wages.

18  **7.    Unjust Enrichment**

19      "Unjust enrichment is the method of recovery for the value of the benefit retained

20  absent any contractual relationship because notions of fairness and justice require it."

21  *Young v. Young*, 164 Wn.2d 477, 484 (2008).  Under Washington law, however, "[a]

22  party to a valid express contract is bound by the provisions of that contract, and may not

1   disregard the same and bring an action on an implied contract relating to the same matter,

2   in contravention of the express contract." *Chandler v. Wash. Toll Bridge Auth.*, 17

3   Wn.2d 591, 604 (1943).

4        In this case, Wurts moves for summary judgment on the City's claim for unjust

5   enrichment.  It is undisputed that the parties entered into a valid contract of employment,

6   and the City even asserts that one of the conditions of being on paid administrative leave

7   is that the employee is capable of doing the essential functions of the job.  Dkt. 38 at 9.

8   What remains unclear, however, is whether the conditions of leave are part of the parties'

9   contract or the CBA.  Because the validity of this claim turns on whether a valid contract

10  exists, the Court requests that the parties address this issue at the pretrial conference on

11  May 4, 2015.  Therefore, the Court reserves ruling on this claim.

12       **8.     Fraud**

13       In the alternative to unjust enrichment, the City asserts a claim against Wurts for

14  fraud by omission and argues that Wurts had an affirmative duty to disclose material facts

15  to his employer, the City.  A party can "establish fraudulent concealment or

16  misrepresentation . . . [by] simply show[ing] that the defendant breached an affirmative

17  duty to disclose a material fact." *Crisman v. Crisman*, 85 Wn. App. 15, 22 (1997), *as*

18  *amended on denial of reconsideration* (Feb. 14, 1997) (citing *Oates v. Taylor*, 31 Wn.2d

19  898, 902–03 (1948)).  Absent an affirmative duty to disclose material facts, a defendant's

20  silence does not constitute fraudulent concealment or misrepresentation. *Favors v.*

21  *Matzke*, 53 Wn. App. 789, 796, *review denied*, 113 Wn.2d 1033 (1989).  When a duty to

22  disclose does exist, however, the suppression of a material fact is tantamount to an

1 affirmative misrepresentation.  *Washington Mut. Sav. Bank v. Hedreen*, 125 Wn.2d 521,

2 526 (1994); *Oates*, 31 Wn.2d at 902.

3       In this case, the parties dispute whether Wurts had an affirmative duty to disclose

4 that he was disabled and unable to perform his job while on administrative leave.  The

5 City again fails to cite any authority for its position.  Aside from standard principal-

6 agency law and cases involving the sale of real property, the City provides only one

7 arguably analogous case where the employee ran a side business with the employer's

8 resources.  *See* Dkt. 38 at 20–22.  In *Williams v. Queen Fisheries, Inc.*, 2 Wn. App. 691,

9 694 (1970), the employer asserted a counterclaim against one of its corporate officers

10 because the officer used the employer's resources to run a personal business.  The court

11 held that a corporate officer occupied a "fiduciary relationship to a private corporation

12 and shareholders thereof akin to that of a trustee, and owe undivided loyalty and a

13 standard of behavior above that of the workaday world."  *Id*.  The Court finds that

14 *Williams* is factually distinguishable because Wurts was merely an employee and, if

15 anything, only owed a duty akin to the regular workaday world.  Therefore, the Court

16 concludes that Wurts did not owe a duty to the City to affirmatively disclose an inability

17 to perform his job and grants Wurts's motion on the City's claim for fraud by omission.

18                                        **IV. ORDER**

19       Therefore, it is hereby **ORDERED** that (1) Wurts's motion for summary judgment

20 (Dkt. 29) is **GRANTED in part** on the City's counterclaims for unjust enrichment and

21 fraud and **DENIED in part**; and (2) Defendants' motion for summary judgment (Dkt.

22 30) is **GRANTED in part** on Wurts's claims for wrongful discharge in violation of

1   public policy based on sexual orientation, discrimination in violation of the WLAD,

2   deprivation of Equal Protection rights, and request for lost wages, and **DENIED in part**.

3          Dated this 29th day of April, 2015.

4

5                                        _____
                                          BENJAMIN H. SETTLE
6                                         United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22